# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

| | | |
|---|---|---|
| GLORIA E. DURANTE, | ) | 3:05-CV-193-ECR (RAM) |
| Plaintiff, | ) | **ORDER** |
| vs. | ) | |
| CITY OF RENO, et al., | ) | |
| Defendants. | ) | |

Before the court is Plaintiff's Motion to Strike Spurious Evidence of Plaintiff's Conduct at Other Casinos. (Doc. #37.) Defendants Chittenden and Peppermill Hotel and Casino oppose the motion (Docs. #41, 55), and Plaintiff replied (Doc. #57).

## BACKGROUND

Plaintiff Gloria Durante filed her Complaint (Doc. #2) with nine claims for relief on April 1, 2005. The crux of Plaintiff's case is racial discrimination. (*See id.*) Plaintiff made a Motion for Partial Summary Judgment against Defendant Peppermill Hotel and Casino (hereinafter "Peppermill") (Doc. #9) on April 27, 2005. Defendant Peppermill opposed that motion (Doc. #28), and filed a Cross-Motion for Summary Judgment (Doc. #29) with Defendant Chittenden on August 1, 2005.

In the combined Opposition and Cross-Motion for Summary Judgment (Docs. #28, 29), Defendants Peppermill and Chittenden (hereinafter collectively "Defendants") revealed certain evidence they discovered that they claim will prove Plaintiff's "pattern and practice of drinking to excess in Northern Nevada casinos, belligerently rejecting casino requests that she 'call it a night,' and claiming 'racism' when she is ultimately either threatened with arrest for trespass or arrested." (Docs. #28, 29.) Defendants claim that records from the El Dorado Casino and Hotel (Doc. #29, Exh. F)

and Atlantis Casino Resort (Doc. #29, Exh. G) in October 2004, and records from the Silver Legacy Resort Casino (Doc. #29, Exh. H) in June 2005, will clearly demonstrate that type of conduct by Plaintiff and prove the reasonableness and nondiscriminatory nature of their response (Doc. #41).

Plaintiff's Motion to Strike Spurious Evidence of Plaintiff's Conduct at Other Casinos (hereinafter "Motion to Strike") (Doc. #31) asks the court to strike all of that recently discovered evidence on the grounds of relevance, impermissible character evidence, and unfair prejudice. (Doc. #29.)

## STATEMENT OF FACTS

A. Plaintiff's Version of the Facts

Plaintiff is a sixty-nine year old African American woman. (Doc. #2.) She claims to have heart conditions such as hypertension and coronary artery disease among other things, and she takes multiple prescription medications. (*Id.*) At certain times, Plaintiff says her blood pressure drops and causes her to become light-headed. (*Id.*)

Plaintiff stayed at the Defendant Peppermill Hotel and Casino (hereinafter "Peppermill") in Reno, Nevada in September 2003 for a slot machine tournament, and claims that she became light-headed in the early morning hours of September 7, 2003. (Doc. #2.) Plaintiff alleges that she fell down and passed out on the casino floor on her way to the slot machines. (*Id.*) After she regained consciousness, she was helped to her feet, and continued towards the slots. (*Id.*)

While sitting at the slot machines, Plaintiff claims she was told to leave by Defendant Martin Chittenden, a Peppermill security officer, for no apparent reason. (Doc. #2.) Plaintiff claims she informed him that she was a registered guest at the hotel, but was nevertheless forcefully removed to an unknown room in the hotel while secured in handcuffs. (*Id.*) She alleges that she remained there

///
///
///

2

1   until Defendant Carranza, a Reno police officer, arrested her, confiscated her medication, and placed her in jail for trespassing.[1] (*Id.*)

Plaintiff was released and returned to the Peppermill after several hours. (Doc. #2.) Plaintiff claims she suffered physical and emotional distress from the mistreatment she received from the Peppermill and Reno Police Department, which she alleges was done on the basis of race. (*Id.*) She also claims that when she got back she discovered that $200 was stolen from her room. (*Id.*)

B.  Defendants' Version of the Facts

Defendants claim that on September 7, 2003, Plaintiff had been continuously drinking and gambling for eleven hours. (Doc. #29.) They claim the hotel's surveillance cameras show that Plaintiff "fell off her chair onto the casino floor, spilled her purse, lost consciousness while staggering away from the machine resulting in her falling prone on the casino floor, nearly striking several nearby patrons, and twice fell forward from a standing position into the slot machine." (*Id.*) When Plaintiff was confronted by Peppermill staff, Defendants claim she refused to return to her hotel room or accept wheelchair assistance in a slurred voice. (*Id.*) Defendants claim Plaintiff was eventually placed under citizen's arrest because she became belligerent. (*Id.*)

According to Defendants, recently discovered evidence proves that Plaintiff has engaged in similar conduct at other local casinos. (Doc. #29.) Specifically, they allege Plaintiff has been ejected from the El Dorado Hotel and Casino (hereinafter "El Dorado") and Atlantis Resort Casino (hereinafter "Atlantis") in October 2004 (Doc. #29, Exh. F), and from the Silver Legacy Resort Casino (hereinafter "Silver Legacy") in June 2005 (Doc. #29, Exh. H).

## LEGAL STANDARD

The general rule is that all "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence," Fed. R. Evid. 401, is admissible, Fed. R. Evid. 402. One limitation, however, is that "[e]vidence of a person's character or a trait of character is not admissible for the

---

[1] The criminal charges were subsequently dismissed on November 3, 2003.

3

purpose of proving action in conformity therewith on a particular occasion . . . ." Fed. R. Evid. 404(a). The rationale is that propensity evidence has a greater potential for prejudicial effect than its admission is worth in minimal probative value. *See* 2 J. Weinstein & M. Berger, Weinstein's Federal Evidence § 404.10[1] (2005).

However, under Federal Rule of Evidence (hereinafter "FRE") 404(b) evidence of prior or subsequent similar conduct, *United States v. Sioux*, 362 F.3d 1241, 1246 (9th Cir. 2004), may be admissible, despite the general prohibition in FRE 404(a), if such evidence is reliable and relevant for an important purpose that is unrelated to propensities, *see Huddleston v. United States*, 485 U.S. 681, 687-88 (1988). To that end, the Ninth Circuit employs a four-part test to determine the admissibility of evidence under FRE 404(b):

> (1) sufficient evidence must exist for the jury to find that the [plaintiff] committed the other acts; (2) the other act must be introduced to prove a material issue in the case; (3) the other acts must not be too remote in time; and (4) if admitted to prove intent, the other acts must be similar to the offense charged.

*United States v. Ayers*, 924 F.2d 1468, 1473 (9th Cir. 1991). Furthermore, in order to be properly admitted, the probative value of the FRE 404(b) similar acts evidence must not be substantially outweighed by the danger of unfair prejudice, *United States v. Brooke*, 4 F.3d 1480, 1483 (9th Cir. 1993); *accord United States v. Khan*, 993 F.2d 1368, 1377 n.8 (9th Cir. 1993), and under FRE 403, courts have broad discretion to balance the competing considerations of probative value versus possible prejudice. *Cohn v. Papke*, 655 F.2d 191, 194 (9th Cir. 1981).

## DISCUSSION

The motion to strike is brought under Federal Rule of Civil Procedure 12(f). Fed. R. Civ. P. 12(f). Only pleadings are subject to motions to strike. *Id.*; *Sidney-Vinstein v. A.H. Robins Co.*, 697 F.2d 880, 885 (9th Cir. 1983). Under Federal Rule of Civil Procedure 7(a), "pleadings" include complaints, answers, replies to counterclaims, answers to cross-claims, third-party complaints, and third-party answers. Fed. R. Civ. P. 7(a). As such, a motion to strike is not the procedurally proper method to seek the exclusion of the El Dorado, Atlantis, and Silver Legacy records. *See Sidney-Vinstein*, 697 F.2d at 885.

4

However, given the nature of Plaintiff's Motion to Strike (Doc. #37), the court will consider it as a motion *in limine* for an evidentiary ruling before trial, and as an evidentiary challenge to the court's reliance on the El Dorado, Atlantis, and Silver Legacy records in ruling on Defendants' Opposition and Cross-Motion for Summary Judgment (Docs. #28, 29). *City of Bangor v. Citizens Commc'ns Co.*, 339 F. Supp. 2d 135, 138 (D. Me. 2004).

A.  Character Evidence

Plaintiff challenges the admissibility of the El Dorado, Atlantis, and Silver Legacy records as improper character evidence under FRE 404. (Doc. #37.) It is well accepted that extrinsic evidence of a person's prior or subsequent bad acts is inadmissible to show their propensity to act in conformity therewith. Fed. R. Evid. 404(a); *Old Chief v. United States*, 519 U.S. 172, 181-82 (1997). Defendants do not contest that position. Their Opposition to Plaintiff's Motion to Strike implicitly recognizes FRE 404's general prohibition of propensity evidence.[2] (*See* Docs. #41, 55.) Defendants argue, however, that the hotel reports are nevertheless admissible under several exceptions.

1.  FRE 406

Defendants submit that evidence of Plaintiff's act at the El Dorado, Atlantis, and Silver Legacy hotels should be admissible as habit evidence. (Doc. #55.) "Habit 'describes one's regular response to a repeated specific situation.'" *United States v. Angwin*, 271 F.3d 786, 799 (9th Cir. 2001) (quoting Fed. R. Evid. 406 advisory committee note). Courts must be cautious with habit evidence because its admission is an exception to the general prohibition of propensity evidence. *Id.*; *Simplex, Inc. v. Diversified Energy Systems., Inc.*, 847 F.2d 1290, 1293 (7th Cir. 1988). Three factors guide the court's

---

[2] In Defendants' Supplemental Points and Authorities (Doc. #55), Defendants argue that "the evidence of events at other casinos is not 'character' evidence at all. These are specific acts, . . . which demonstrate not the 'character' of the Plaintiff, but her very acts, words, and deeds" (*Id.*). Defendants' attempt to separate the two is unavailing. It is well accepted that although "character" evidence is a "generalized description of a person's disposition or general trait," 2 J. Weinstein & M. Berger, Weinstein's Federal Evidence § 404.02[1] (2005), evidence of a person's specific acts is one of many *methods* of proving a person's character, *see, e.g.*, *Connelly v. Hyundai Motor Co.*, 351 F.3d 535, 546-47 (1st Cir. 2003), and to that extent, FRE 404 prevents the use of specific acts to prove a person's character, subject to limited exceptions, Fed. R. Evid. 404(b).

determination on the admissibility of such evidence, "(1) the degree to which the conduct is reflexive or semi-automatic as opposed to volitional; (2) the specificity of particularity of the conduct; and (3) the regularity or numerosity of the examples of the conduct." *Angwin*, 271 F.3d at 799. Defendants, however, provide no analysis of any of these factors (*see* Doc. #55), and therefore, fail to meet their burden of proof as the proponent of habit evidence. *Angwin*, 271 F.3d at 799.

In any event, the court finds that the El Dorado, Atlantis, and Silver Legacy incident reports do not sufficiently establish that Plaintiff has a habit, as defined under FRE 406, of "meeting the situation of being ejected from properties with a specific kind of conduct—claims of racial prejudice and health problems." (Doc. #55.) First, there is nothing within the records that demonstrates that Plaintiff's conduct was semi-automatic in nature or instinctual. A number of the reports indicate that Plaintiff's acts were volitional and that she made deliberate assessments of each situation. (*See* Doc. #29, Exhs. F-H.)

Second, Defendants' generalized summary of Plaintiff's conduct (Doc. #55) is not sufficiently descriptive enough to be categorized as habit evidence. The purported conduct must be particularized and specific in order to be probative. *See Angwin*, 271 at 800; *see, e.g.*, *Babcock v. General Motors Corp.*, 299 F.3d 60, 66 (1st Cir. 2002) (admitting testimony that plaintiff always put his seat belt on when riding inside a car). Also, while the court finds that the records are somewhat similar in the general course of events, they lack a sufficient degree of identity between each other and the instant matter to constitute habit evidence (*See* Doc. #29, Exhs. F-H).[3] *See Simplex, Inc.*, 847 F.2d at 1293 ("[m]ere similarity . . . does not present the kind of 'sufficiently similar circumstances to outweigh the danger . . . of prejudice and of confusion'"); *see also Priest v. Rotary*, 98 F.R.D. 755, 758 (N.D. Cal. 1983)

---

[3]Defendants claim that Plaintiff has a habit of "meeting the situation of being ejected from properties with a specific kind of conduct—claims of racial prejudice and health problems." (Doc. #55.) However, a report generated by Mr. Jeremy Horton, a security offer at the Atlantis, indicated that when Plaintiff was asked to leave the premises she made her medical problems known to hotel personnel (Doc. #28, Exh. G), but there are no allegations that Plaintiff made any claims of racial prejudice (*see* Doc. #55). A report by Ms. Linda Elliot of the Silver Legacy is also devoid of any allegations of racial prejudice. (Doc. #29, Exh. H.)

(habit "is [a] person's regular practice of meeting a *particular* kind of situation with a *specific* type of conduct" (emphasis added)).

Third and last, Defendants have not shown enough instances of the purported conduct to justifying an inference of systematic conduct. Proof of a habit or routine practice under FRE 406 generally requires a high degree of frequency to ensure that the response is "more than a mere 'tendency' to act in a given manner . . . ." *Simplex, Inc.*, 847 F.2d at 1293. The court finds that four incidents, which includes the case at hand, over a period of two years is insufficient. *See Mobil Exploration v. Cajun Const. Servs.*, 45 F.3d 96, 99-100 (5th Cir. 1995) ("[e]vidence of [a person's] actions on only a few occasions . . . [is] not enough"); *see, e.g.*, *Reyes v. Missouri Pac. R.R. Co.*, 589 F.2d 791, 794 (5th Cir. 1979) (holding four convictions over a three and one-half year period was of insufficient regularity to demonstrate a habit for public intoxication).

Altogether, there is insufficient proof to establish that Plaintiff has a habit of "meeting the situation of being ejected from properties with a specific kind of conduct—claims of racial prejudice and health problems." (Doc. #55.) The arguments and evidence provided by Defendants are inadequate to justify such a finding. *Angwin*, 271 F.3d at 799. In addition, the court finds that this is neither the type of conduct nor kind of situation that should be subject to FRE 406. *See, e.g.*, *Priest v. Rotary*, 98 F.R.D. at 758-59 (finding that evidence of a person's past intimate relationships with men to show their habit of living with them for financial gain to be "devoid of merit," "not . . . within the contemplation of Rule 406," and "clearly a thinly disguised attempt to seek character evidence").

2. <u>FRE 404(b) & 403</u>

Defendants also argue the hotel reports should be admissible under FRE 404(b) to evidence the industry's standard response to disruptive guests such as Plaintiff. (Doc. #41.) They claim that a comparison between their reaction and those of other local hotels under similar conditions will prove they acted reasonably and without a discriminatory intent (*id.*), and that Plaintiff has common scheme or plan of behaving poorly and then claiming racial discrimination (Doc. #55). Thus, because Defendants seek to introduce evidence of Plaintiff's subsequent similar conduct for a purpose that is allegedly unrelated to Plaintiff's propensities, *see Huddleston v. United States*, 485 U.S. 681, 687-88

7

1  (1988), the Ninth Circuit's four-part inquiry under FRE 404(b) applies, *United States v. Ayers*, 924 F.2d 1468, 1473 (9th Cir. 1991).

The first part requires the court to determine whether there is sufficient evidence for the jury to find that Plaintiff committed the other acts at the El Dorado, Atlantis, and Silver Legacy hotels. *Id.* To that extent, Defendants have provided hotel surveillance reports, employee shift logs, security incident reports, evidence forms, and the like from each hotel. (Doc. #29, Exhs. F-H.) All of those reports clearly identify Plaintiff by name, description, and/or registered hotel room number, and those reports are signed and dated by appropriate hotel personnel. (*See id.*) There are also photographs of Plaintiff. (*Id.*) Although Plaintiff contests t the truth and accuracy of those reports, the record shows that many of the incidents in question were reported by more than one person. The hotels' ability to corroborate those incidents therefore provides sufficient evidence such that a jury could find that Plaintiff committed those other acts. *See United States v. Dhingra*, 371 F.3d 557, 566 (9th Cir. 2004) (calling the requirement for sufficient evidence a "low-threshold test").

The second inquiry considers whether the evidence would be used to prove a material issue, *Ayers*, 924 F.2d at 1473, and to that extent Defendants argue the reports from El Dorado, Atlantis, and Silver Legacy would be used to prove the reasonableness and non-discriminatory nature of their actions. (Doc. #41; *see* Doc. #55.) Of course, the court recognizes that whatever an industry standard may be it is never automatically per se reasonable, *The T.J. Hooper*, 60 F.2d 737, 740 (2d Cir. 1932) (stating that the industry standard is relevant, but that "[i]t may never set its own tests"); *see also Johnson v. United States*, 163 F. Supp. 388, 394 (D. Mont. 1958); however, because such evidence may infer that Defendants did not act with discriminatory intent, *see Dennis v. Thurman*, 959 F. Supp. 1253, 1263 (C.D. Cal. 1997) (stating that discriminatory intent is an essential element under section 1981), the court finds that what other local hotels would do under similar circumstances could be relevant to a material issue in this case.

///

///

///

8

Defendants also seek to admit evidence of Plaintiff's other acts to prove she has a common plan or scheme of going to hotels, acting poorly, and then claiming racism to avoid behaving properly.[4] (*See* Doc. #55.) That argument was supplemented at oral argument with an additional theory that Plaintiff's other acts could be used to show her motive for deliberately acting out in order to "play the race card." It is not altogether clear to the court, however, how those purported purposes for admitting evidence of Plaintiff's other acts bear any relation to a *material* issue in this case. *See, e.g.*, *United States v. Brown*, 880 F.2d 1012, 1015 (9th Cir. 1989) (refusing to admit other acts evidence to show motive where there was no obvious link to the key issues in the case at hand). Whether or not Plaintiff schemed to play the race card by "acting poorly" is not a material issue, and it does not prove that Defendants acted without a discriminatory intent. As the proponents of such evidence it is Defendants' duty to articulate a clear purpose for that evidence, and yet they failed to do so. *United States v Givan*, 320 F.3d 452, 466 (3d Cir. 2003) ("the proponent of [Rule 404(b)] evidence must *clearly* articulate why it is relevant for something other than establishing . . . propensity or character" (emphasis added)); *United States v. Arambula-Ruiz*, 987 F.2d 599, 602 (9th Cir. 1993) (holding that the party seeking to introduce evidence under FRE 404(b) "must articulate *precisely* the evidential hypothesis by which a fact of consequence may be inferred from the other acts evidence" (emphasis added)); *see, e.g.*, *Priest v. Rotary*, 98 F.R.D. at 759-60 (considering two specific motive theories articulated by the defendant).

Moreover, even if the court were to take Defendants' position at face value, their argument would nevertheless fail because the acts at issue are too dissimilar from one another to constitute a common plan or scheme. Defendants' generalizations will not suffice. In *United States v. Webb*, 466 F.2d 1352, 1353 (9th Cir. 1972), for example, "two men, wearing green army style parkas and dark blue ski masks, one of them carrying a pistol, robbed [a bank]." Although the defendant Webb could not be identified as one of the robbers, he was convicted based on prior act evidence that he had been

---

[4]This argument is not entirely clear from Defendants' briefs, but Defendant articulated this alleged common plan or scheme at oral argument.

"caught [alone and] red-handed robbing a . . . store . . . , using a [similar] pistol . . . [while wearing] a dark suit and white shirt, a wig, and a [non-ski] mask." *Id.* The conviction was reversed on appeal, however, because there were only a few similarities between the two robberies, the gun and a mask, and those similarities only existed in a general respect. *Id.* The same is true in this instance. For example, the incident reports from other hotels allege that Plaintiff yelled profanities at hotel staff and/or other patrons (Doc. #29, Exhs. F-H), but there are no such allegations that Plaintiff did that at the Peppermill. In Defendants' Opposition, they merely claim that Plaintiff refused to comply with hotel personnel in a slurred voice. (Doc. #29.) It was also reported that Plaintiff took off all her clothes in front of hotel security at the Atlantis and Silver Legacy (Doc. #29, Exhs. G, H), but there are no similar reports of that type of conduct at the El Dorado or Peppermill. The El Dorado had complaints that Plaintiff was sexually harassing its dealers and other patrons (Doc. #29, Exh. F), but again, neither the Atlantis, Silver Legacy nor the Peppermill had similar complaints. The El Dorado and Silver Legacy also reported that Plaintiff notified their staffs that she had pending discrimination suits against other local casinos (Doc. #29, Exh. F, H), but that was not reported at the Peppermill or Atlantis. "Indeed, the differences . . . are more striking than the resemblances," *United States v. Webb*, 466 F.2d at 1353, and thus, the court cannot find that Plaintiff's subsequent acts show any common scheme or plan. *Id.*

Last, the court must consider whether the proffered evidence is too remote in time.[5] *Ayers*, 924 F.2d at 1473. Here, the events at the El Dorado, Atlantis, and Silver Legacy occurred only a year to a year and a half after the events that gave rise to this action. (Doc. #29, Exh. F-H; Doc. #37.) However, considering the alleged purpose for which Defendants claim they will offer the hotel reports, *see United States v. Spillone*, 879 F.2d 514, 519 (9th Cir. 1989) (holding that answers to "[q]uestions about 'how long is too long' . . . depend on the theory that makes the evidence admissible"), the court

---

[5]The court does not separately consider the fourth factor, whether "the other acts [are] similar to the offense charged," *Ayers*, 924 F.2d at 1473, because Defendant does not seek the admission of those acts for the purpose of establishing identity, *United States v. Luna*, 21 F.3d 874, 878 n.1 (9th Cir. 1994), or Plaintiff's intent, *Ayers*, 924 F.2d at 1473.

finds it difficult to see the usefulness of subsequent events as evidence of an industry standard that existed in the past, *see, e.g.*, *Buchanna v. Diehl Mach, Inc.*, 98 F.3d 366, 371 (8th Cir. 1996) (calling the relevance of subsequent events as evidence of an industry standard a close question); *Citizens Ins. Co. of America v. Sears Roebuck & Co.*, 203 F. Supp. 2d 837, 848 n.10 (W.D. Mich. 2002). Whereas prior incidents may be relevant indications of an industry standard or policy, it would seem impossible, and unfair as well, to define a policy only according to incidents that occurred after the claim arose. *See Bemis v. Edwards*, 45 F.3d 1369, 1374-75 (9th Cir. 1995); *Davis v. City of Ellensburg*, 869 F.2d 1230, 1235 (9th Cir. 1989). Defendants do not offer any reason for the court to conclude otherwise, and for those reasons, the court finds that the hotel reports are too remote in time to prove they acted in accordance with the local custom.

The court also finds that the probative value of the El Dorado, Atlantis, and Silver Legacy reports are substantially outweighed by FRE 403 concerns. As previously discussed, this evidence only has inferential value. It does not conclusively prove that Defendants' acted without discriminatory intent, and it is not the only means for Defendants to rebut the claim that they did; however, their use poses a significant danger of unfair prejudice to Plaintiff. In that respect, Defendants attempted to argue at the hearing on these motions that all relevant evidence is potentially damaging, so FRE 403 should not act as a barrier in this instance. That argument is wholly without merit. All courts recognize the inherent and heightened dangers with propensity evidence because it has been found to "weigh too much with the jury and to so overpersuade them as to prejudge one with a bad general record . . . ." *Old Chief*, 519 U.S. at 181 (quoting *Michelson v. United States*, 335 U.S. 469, 475-76 (1948)). The risk the fact-finder would misuse the reports, intentionally or unintentionally, as evidence of Plaintiff's propensities is readily apparent in this case, and a limiting instruction would not alleviate that danger. Plaintiff is featured as the sole actor in each incident and these reports are of the type and number such that a jury could determine the nature of Defendants' acts based on Plaintiff's propensities alone. *See* Fed. R. Evid. 404(a); *United States v. Hankey*, 203 F.3d 1160, 1172 (9th Cir. 2000) ("unfair prejudice means 'undue tendency to suggest decision on an improper basis'"). The

other hotels' reports would carry greater weight for Defendants by allowing them to cast a negative light on Plaintiff and portray her as a constant nuisance to local casinos, *see* Fed. R. Evid. 403, than prove the reasonableness or non-discriminatory nature of their acts, *see S.E.C. v. Dain Rauscher, Inc.*, 254 F.3d 852, 856 (9th Cir. 2001) (holding that "the industry standard is but one factor to consider" on the issue of negligence); *The T.J. Hooper*, 60 F.2d at 740.

Admission of these reports for the purpose of showing the reasonableness and nondiscriminatory nature of Defendants' conduct would also result in undue delay, Fed. R. Evid. 403, because the relevance of the reports turns on their accuracy and the underlying facts. A determination of the underlying facts in each report, however, would virtually amount to a mini-trial of each incident.[6] *See, e.g., City of Long Beach v. Standard Oil Co. of Calif.*, 46 F.3d 929, 938 (9th Cir. 1995). The continued focus on these acts would also magnify the risk that those events could be used as propensity evidence. In any event, the court does not believe that these reports are the only source of evidence for Defendants to prove they had a nondiscriminatory intent. *See, e.g., United States v. Scott*, 767 F.2d 1308, 1311 (9th Cir. 1985) (admitting similar act evidence when it was "essential" to the case). They may, for example, show similar prior occurrences in other hotels that involved other

---

[6] At the hearing on this set of motions, Defendants stated that they would be willing refrain from introducing Plaintiff's acts at the other casinos that lead to the incident reports, such as her alleged "grabbing" of dealers. Defendants stated that they would only seek the admission of her reactions to the hotels' requests to leave the casino floor in order to show that their own response was reasonable and nondiscriminatory. However, Defendants' proposed resolution is unsatisfactory. Defendants cannot simply introduce evidence of Plaintiff's allegedly "belligerent" and "profane" behavior at other casinos and those casinos' responses without any factual predicate for those events. Defendants' claim the evidence shows they acted reasonably, but that depends on a comparison between the Plaintiff's stay at the Peppermill and at the other hotels. That comparison would not relevant if the fact finder could not determine whether the El Dorado, Atlantis, and Silver Legacy themselves acted reasonably and without discriminatory intent. The underlying events to those hotels' reports are therefore necessary for any of them to have any comparative effect and probative value. In addition, separating the underlying factual events from the hotels' responses would only allow Defendants to exaggerate any similarities, and hide the dissimilarities, between these occurrences and unfairly increase the probative value of those reports.

patrons in order to establish the industry standard, or they could produce employee handbooks that describe the procedures for dealing with disruptive guests. *See Old Chief*, 519 U.S. at 184 (holding that probative value under FRE 403 may be assessed by comparing the evidence against other alternatives). This particular evidence is not crucial or essential to Defendants' case.

Accordingly, the court finds that the hotel reports (Doc. #29, Exhs. F-H) do not qualify as habit evidence under FRE 406, and the reports should be inadmissible under FRE 404 and 403 because their introduction would cause more harm to Plaintiff, *see* Fed. R. Evid. 404(a), than help to Defendants. Not only is the probative value of the reports as evidence of the local custom diminished by their remoteness in time, *see* Fed. R. Evid. 404(b); *Ayers*, 924 F.2d at 1473, but whatever logical relevance remains would be substantially outweighed by the risk that a jury would misuse them as evidence of Plaintiff's propensities.

## CONCLUSION

**IT IS THEREFORE ORDERED** that Plaintiff's Motion to Strike Spurious Evidence of Plaintiff's Conduct at Other Casinos is **GRANTED**. (Doc. #37.)

DATED: December 9, 2005.

_____
UNITED STATES MAGISTRATE JUDGE