1

2

3

4

5

6        **UNITED STATES DISTRICT COURT**
              **DISTRICT OF NEVADA**
7                **RENO, NEVADA**

8
GLORIA DURANTE              )        3:05-cv-0193-ECR-RAM
9                           )
           Plaintiff,       )
10                          )
vs.                         )        **ORDER**
11                          )
CITY OF RENO, RPD OFFICER   )
12 GEORGE CARRANZA, MARTIN  )
CHITTENDEN, PEPPERMILL      )
13 CASINOS, IND. (dba PEPPERMILL )
HOTEL AND CASINO),          )
14                          )
           Defendants.      )
15 _____)

16

17      On April 1, 2005, Plaintiff Gloria Durante (hereinafter

18 "Plaintiff" or "Durante") filed a complaint (#2) alleging causes of

19 action arising under 42 U.S.C. 1981, 42 U.S.C. 1982, Nev. Rev.

20 Stat. § 651.050, and common law battery and false imprisonment

21 against Defendants Peppermill and Chittenden; causes of action

22 arising under N.R.S. 651.050 against Defendant Peppermill alone;

23 and causes of action arising under 42 U.S.C. 1983 against

24 Defendants Carranzo and City of Reno.  On April 27, 2005, Plaintiff

25 filed a Motion for Partial Summary Judgment (#8) against Defendant

26 Carranza, and a separate Motion for Partial Summary Judgment (#9)

27 against Defendant Peppermill.  On July 29, 2005, Defendant Carranza

28 opposed (#30) the motion (#8) and filed a cross-motion for summary

judgment (#31) against Plaintiff.  On August 1, 2005, Defendants Peppermill and Chittenden filed an opposition (#28) to Plaintiff's motion (#9) and a cross-motion for summary judgment against Plaintiff (#29).  Plaintiff filed a reply (#35) to Chittenden and Peppermill's opposition (#28) on August 25, 2005, and a reply (#34) to Carranza's opposition (#30) on August 26, 2005.  Plaintiff also filed an "Opposition re Cross Motion for Summary Judgment" (#36) on August 25, 2005.  Plaintiff does not specify which cross-motion #36 opposes, but it appears to be Peppermill's (#29) as Plaintiff filed an opposition (#66) under seal to Carranza's motion (#31) on December 23, 2005.  After obtaining leave for an extension of time, Defendant Carranza filed a reply (#70) on January 18, 2006.

The motions being ripe, we address them herein.  For the reasons stated below, Plaintiff's motions (##8, 9) will be **DENIED**. Defendants Peppermill and Chittenden's motion (#29) will be **DENIED**, and Defendant Carranza's motion (#31) will be **GRANTED** as to a finding of qualified immunity.

## I.   FACTUAL HISTORY

In the early morning hours of September 7, 2003, Ms. Durante was arrested for trespassing while attempting to play the slot machines at the Peppermill Casino.  She was a registered guest of the Peppermill hotel, where she had been staying since September 1, 2003.  Many of the events of that morning are disputed by the parties.

2

1    Ms. Durante claims that she had become light-headed after
2  taking her heart medication, which caused her to fall down at one
3  point while walking in the casino. (Pl. Mot ## 8, 9, Durante Dec.
4  at 1-2.) After her fall, she returned to a slot machine, where she
5  played until Defendant Chittenden summarily told her "you can't
6  play anymore." (Id. at 2.) Ms. Durante claims that she responded
7  that he must be kidding and Mr. Chittenden told her "get out of the
8  hotel." (Id.) When she refused, she claims he forcefully grabbed
9  her from behind to handcuff her and dragged her to another part of
10 the casino, where she was ultimately arrested for trespassing by
11 Defendant Carranza. (Id. at 2-3.) Ms. Durante claims she
12 explained to both Chittenden and Carranza that she was a registered
13 guest of the hotel and that she was a heart patient, and that
14 neither investigated these issues further. (Id. at 3.)

15    Defendants claim that Ms. Durante was drunk and disruptive,
16 had been asked to leave several times, and had been offered a
17 wheelchair before she was arrested for trespassing. (Def. Mot.
18 #29, Ex. E.) They present video evidence of Ms. Durante slumped in
19 her chair, falling from her chair while sitting and to the ground
20 while walking, and otherwise appearing intoxicated over a period of
21 four hours. The video also shows Defendant Chittenden approaching
22 her several times, one of which was with a wheelchair. It shows a
23 female security guard ultimately handcuffing Ms. Durante and
24 leading her away with Mr. Chittenden. Defendant Police Officer
25 Carranza states that he based his decision to arrest on information
26 obtained from security staff with whom he had prior experience,

27

28                                    3

their prepared statements, and his observations of Ms. Durante.
(Def. Mot. #31, Ex. A.)

## II.  DISCUSSION

### A.  Summary Judgment Standard

Summary judgment allows courts to avoid unnecessary trials
where no material factual dispute exists.  Northwest Motorcycle
Ass'n v. U.S. Dept. of Agriculture, 18 F.3d 1468, 1471 (9th Cir.
1994).  The court must view the evidence and the inferences arising
therefrom "in the light most favorable to the nonmoving party,"
Bagdadi v. Nazar, 84 F.3d 1194, 1197 (9th Cir. 1996), and should
award summary judgment where no genuine issues of material fact
remain in dispute and the moving party is entitled to judgment as a
matter of law.  Fed. R. Civ. P. 56(c).  Judgment as a matter of law
is appropriate where there is no legally sufficient evidentiary
basis for a reasonable jury to find for the nonmoving party.  Fed.
R. Civ. P. 50(a).

The moving party bears the burden of informing the court of
the basis for its motion, together with evidence demonstrating the
absence of any genuine issue of material fact.  Celotex Corp. v.
Catrett, 477 U.S. 317, 323 (1986).  Once the moving party has met
its burden, the party opposing the motion may not rest upon mere
allegations or denials in the pleadings, but must set forth
specific facts showing that there exists a genuine issue for trial.
Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).
Although the parties may submit evidence in an inadmissible form--
namely, depositions, admissions, interrogatory answers, and

affidavits--only evidence which might be admissible at trial may be considered by a trial court in ruling on a motion for summary judgment.  Fed. R. Civ. P. 56(c); Beyene v. Coleman Security Services, Inc., 854 F.2d 1179, 1181 (9th Cir. 1988).

In deciding whether to grant summary judgment, a court must take three necessary steps: (1) it must determine whether a fact is material; (2) it must determine whether there exists a genuine issue for the trier of fact, as determined by the documents submitted to the court; and (3) it must consider that evidence in light of the appropriate standard of proof.  Anderson, 477 U.S. at 248.  Summary Judgment is not proper if material factual issues exist for trial.  B.C. v. Plumas Unified Sch. Dist., 192 F.3d 1260, 1264 (9th Cir. 1999).  "As to materiality, only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson, 477 U.S. at 248.  Disputes over irrelevant or unnecessary facts should not be considered.  Id.  Where there is a complete failure of proof on an essential element of the nonmoving party's case, all other facts become immaterial, and the moving party is entitled to judgment as a matter of law.  Celotex, 477 U.S. at 323.  Summary judgment is not a disfavored procedural shortcut, but rather an integral part of the federal rules as a whole.  Id.

The Ninth Circuit "requires the non-moving party to produce 'very little evidence' to overcome a motion for summary judgment in a discrimination case because 'the ultimate question is one that can only be resolved through a searching inquiry – one that is most appropriately conducted by a factfinder, upon a full record.'"

<u>Lindsey v. SLT Los Angeles, LLC</u>, – F.3d –, WL 3470286, at 3 (9th Cir. 2005) (citations omitted).

**B.  Motions Regarding Defendants Peppermill and Chittenden**

**1. 1981 claims**

The Ninth Circuit has recently addressed the standard for assessing when an entities actions violate section 1981.[1]  <u>Id.</u>  The court in <u>Lindsey</u> adapted the <u>McDonnell-Douglas</u> balance-shifting

---

[1]42 U.S.C. section 1981(a) provides

All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens.

Section 1981(b) defines "make and enforce contracts" as including "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship."  Plaintiff's complaint alleges that she was denied the benefits of an implied contract for services with the Peppermill.  We note that the relationship between a gambler and her casino is not as clearly contractual as many others previously tackled by the Federal courts.  However, Defendants do not challenge Plaintiff's 1981 claims on that basis, and so we proceed on the assumption that a contractual relationship existed between Plaintiff and Defendants.

inquiry for employment discrimination suits to the realm of discrimination in services-contracting as follows:

First, a plaintiff must demonstrate a prima facie case of discrimination by showing that: "(1) it is a member of a protected class, (2) it attempted to contract for certain services, and (3) it was denied the right to contract for those services . . . [and (4)] that such services remained available to similarly-situated individuals who were not members of the plaintiff's protected class." Id. at 4.  In addition, the court left open the possibility that in cases where evidence of how similarly-situated individuals were treated is not available, courts may wish to tailor the fourth element to more directly suit the needs of services-contracting cases by allowing for a showing that "plaintiff received services in a markedly hostile manner and in a manner which a reasonable person would find objectively discriminatory."  Id.

Once a plaintiff has established a *prima facie* case, then the burden shifts to the defendant to produce evidence of a legitimate non-discriminatory reason for denying services to the plaintiff. Id. at 6.  If the defendant produces evidence of a legitimate non-discriminatory reason, then "the presumption of discrimination 'drops out of the picture,' and the plaintiff has the new burden of proving that the proffered reasons were a pretext for discrimination.  Id. at 7 (citations omitted).  "A plaintiff can prove pretext in two ways: (1) indirectly, by showing that the employer's proffered explanation is 'unworthy of credence' because it is internally inconsistent or otherwise not believable, or (2)

7

directly, by showing that unlawful discrimination more likely motivated the employer." Id. (citations omitted).

**a. 1981 analysis**

We now apply the facts at hand to the tests outlined above. First, it is undisputed that Ms. Durante is a member of the protected class of African-Americans. Second, she attempted to utilize the services the Peppermill held out to the public, in this case, gambling on the slot machines in the casino.

However, there appears to be some dispute as to the third element: whether Ms. Durante was denied the right to contract for services. While it is undisputed that Ms. Durante wanted to keep gambling in the casino and that Defendants refused her access, there appears to be a genuine issue of fact as to whether Ms. Durante was denied the right to contract for services in terms mutually acceptable to both parties. A jury could find that Defendants' requirements that their patrons be able to walk and sit up without falling and otherwise safely use their services are legitimate contract terms. If such terms are indeed legitimate and Ms. Durante was unable or refused to meet those terms, then her inability to meet the terms is what terminated the contractual relationship, not Defendants' actions.

Because we find that, when the facts are taken in the light most favorable to Defendants, a genuine issue of material fact exists as to Plaintiff's *prima facie* case, we need not pursue the inquiry further in relation to Plaintiff's motion for summary judgment. We, therefore, find that Plaintiff has not established

by matter of law that she was discriminated against in violation of section 1981.

However, in order to address Defendants Peppermill and Chittenden's motion, we must also consider the facts in the light most favorable to Plaintiff.  From that perspective, Plaintiff's claims survive the elements for a *prima facie* case.  In addition to the first two elements discussed above, from the view of Plaintiff, a jury could find that she was denied the right to contract for services, as there was no express or implied contract term that she remain upright while gambling.  Furthermore, Plaintiff has presented some evidence of white "tester" guests creating similar nuisances and not being arrested for trespass.  In addition, Plaintiff claims that the manner in which she was asked to leave and then arrested was markedly hostile.  Because differing minds could reach distinct conclusions in examining the evidence proffered by both parties as to the treatment of Ms. Durante and white guests at the hotel, we find that this fourth element presents the kinds of factual issues best resolved by a jury.  See Id. at 5, 11.

Because we have found that Plaintiff has established enough of a *prima facie* case of discrimination to survive summary judgment, the burden shifts to Defendants to offer a legitimate non-discriminatory reason for denying Ms. Durante the continued use of the casino.  Defendants have satisfied their burden by presenting evidence that Ms. Durante was disruptive to the casino by sleeping, falling off her chair, falling down while walking, responding

9

1  belligerently to casino staff, and refusing the assistance of a

2  wheelchair to safely exit the casino.

3      Because Defendants have satisfied their burden, Plaintiff must

4  at least present an issue of fact that Defendants' proffered

5  legitimate non-discriminatory reasons are a pretext for

6  discrimination.  Plaintiff has not presented any direct evidence of

7  discrimination or discriminatory intent.  However, a plaintiff may

8  prove pretext indirectly by demonstrating that the defendants'

9  proffered legitimate reasons are not credible.  Id. at 7.

10      Defendants claim that Plaintiff was obviously drunk,

11 belligerent, and a danger to herself and others.  In support of

12 their claim, they offer 4 hours of video surveillance showing Ms.

13 Durante sleeping at the slot machines, falling from her chair,

14 falling while walking, and refusing the use of a wheelchair.  In

15 turn, Ms. Durante claims that she was not drunk, that she was on

16 medication for a heart condition which caused her to be light-

17 headed and have fainting spells, that Defendants had possession of

18 her medication and knowledge of her condition, and that Defendants

19 had no proof that she was intoxicated.

20      In examining the video, it is very difficult to find that

21 Defendant's proffered non-discriminatory reasons are not credible.

22 True, Ms. Durante does not appear to be directly upsetting other

23 guests, but she is clearly unable to take care of herself without

24 falling down.  In addition, the video shows Defendants' staff

25 offering a wheelchair, which indicates concern for Ms. Durante's

26 condition and an attempt to safely remove her without resorting to

27 arrest.  While Ms. Durante's evidence that she is a heart patient

28

10

may rebut Defendants' claims that she was drunk and belligerent, it does not rebut their claim that she was a danger to herself and others on the casino floor.  Still, Ms. Durante's pointing to Defendants' lack of concrete evidence that Ms. Durante was intoxicated from alcohol, and her evidence of a known medical reason for her wobbliness, appears to raise just enough of a factual issue regarding credibility to require a jury's consideration of the evidence and ultimate determination of discriminatory intent.[2]

**2. Section 1982 claims**

42 U.S.C. 1982 provides that all citizens shall have the same rights "to inherit, purchase, lease, sell, hold, and convey real and personal property."  While section 1982 rights generally attach to property rights such as housing, at least one circuit court has applied the statute to the rights of invited guests to a private pool to "go and come at pleasure."  <u>Olzman v. Lake Hills Swim Club, Inc.</u>, 495 F.2d 1333 (2nd Cir. 1974).  In addition, section 1982 rights have been found to attach to commercial establishments located within a hotel.  See <u>Pinkney v. Meloy</u>, 241 F. Supp. 943, 947 (D.C. Fla. 1965) (barber shop in hotel covered where the shop holds itself out to serve hotel guests).  Because "narrow construction of the language of section 1982 would be quite inconsistent with the broad and sweeping nature of the protection

_____

[2]As Plaintiff provided enough evidence in her original motion and responses to survive summary judgment, we need not address her supplemental briefing, which was not submitted within the timeframe provided for in the rules.

11

meant to be afforded by  . . . the Civil Rights Act . . . from which [it] was derived," we find that the Peppermill casino is covered under section 1982.  Sullivan v. Little Hunting Park Inc., 396 U.S. 229, 237 (1969).

The Ninth Circuit, as well as several others, has applied the McDonnell-Douglas burden-shifting test to discrimination claims arising under section 1982.  Phiffer v. Proud Parrot Motor Hotel, Inc., 648 F.2d 548, 551 (9th Cir. 1980); see, also, e.g., Asbury v. Brougham, 866 F.2d 1276, 1279-80 (10th Cir. 1989); Selden Apartments v. U.S. Dept. of H.U.D., 785 F.2d 152, 159-60 (6th Cir. 1986).  Therefore, our analysis conducted and conclusions reached regarding section 1981 applies to Defendant Peppermill's motion regarding section 1982, and we find that an issue of fact exists for Plaintiff's 1982 claims.[3]

**3. Nev. Rev. Stat. § 651.050 et seq.**

Plaintiff requests injunctive and compensatory relief for alleged violation of her rights under Nev. Rev. Stat. section 651.050 et seq.  Nev. Rev. Stat. section 651.070 provides that "[a]ll persons are entitled to the full and equal enjoyment of the goods, services, facilities, privileges, advantages and accommodations of any place of public accommodation, without discrimination or segregation on the ground of race, color, religion, national origin or disability."

---

[3]Plaintiff did not request summary judgment on the section 1982 claims, and so we do not reach a conclusion from that particular factual perspective.

12

As discussed above, Plaintiff has raised a genuine issue of material fact that she was denied equal enjoyment of services in a place of public accommodation, and therefore this claim survives Defendants' motion for summary judgment.[4],[5]

## 4. False Imprisonment

To establish a claim of false imprisonment, Plaintiff must prove that she was "restrained of h[er] liberty under the probable imminence of force without any legal cause or justification." Hernandez v. Reno, 634 P.2d 668, 671 (Nev. 1981). Nev. Rev. Stat. section 651.020 provides that "[e]very owner or keeper of any hotel, inn, motel, motor court, or boardinghouse or lodginghouse in this state shall have the right to evict from such premises anyone who acts in a disorderly manner, or who destroys the property of any such owner or keeper, or who causes a public disturbance in or upon such premises."[6] Reno Municipal Code section 8.10.010, under which Ms. Durante was arrested, provides in relevant part:

---

[4] We note that Plaintiff has requested both injunctive and compensatory damages under Nev. Rev. Stat section 651.050 et seq. If such a violation is ultimately determined, Nev. Rev. Stat. section 651.050 requires the demonstration of actual monetary injury in order to receive compensatory damages. Long v. Coast Resorts, Inc., 267 F.3d 918, 925 (9th Cir. 2001).

[5] We note further that the Complaint's references to intimidation, threats, punishment, etc., appear to be inapplicable to Plaintiff's civil rights claims. Nev. Rev. Stat. section 651.080, the only section that references threats, intimidation, punishment, etc., provides for criminal penalties and not civil remedies.

[6] We note that there is some uncertainty as to whether Nev. Rev. Stat. 651.080 applies to a casino attached to a hotel. Because Defendants Peppermill and Chittenden did not raise this issue, we will not address it here.

13

> Every person who . . . willfully goes or remains upon
> any land or in any building after having been warned by
> the owner or occupant thereof not to trespass is guilty
> of a misdemeanor.  If the premises were at the time open
> to the public, the warning must have been given within
> the previous six months.

The Nevada Supreme Court has found a casino patron to be properly identified as a trespasser when, after being found slumped in his chair, he was asked to leave by security and he refused to do so. Billingsly v. Stockmen's Hotel, Inc., 901 P.2d 141, 145 (Nev. 1995).

We find that the inquiry into whether or not Plaintiff's actions were disorderly or disturbing to the public, as presented by Nev. Rev. Stat. section 651.020, would present a question of fact best assessed by a jury.  Although the undisputed actions of Plaintiff include being slumped in a chair and refusing to leave, there is some dispute as to how often and when she was asked to leave and whether she was asked to leave the hotel, which would more clearly fall under 651.020, or just the casino, which may not. Thus, there appears to be enough of factual dispute regarding the circumstances to send the false imprisonment claim to the jury.

## 5.  Battery

"To establish a battery claim, a plaintiff must show that the actor (1) intended to cause harmful or offensive contact, and (2) such contact did occur."  Switzer v. Rivera, 174 F. Supp. 2d 1097, 1109 (D. Nev. 2001).  In order to sustain a battery claim against a security guard, some courts have held that a detained customer must

14

demonstrate unreasonable force or a threat of physical harm, or a well-founded fear of imminent harm.  See <u>Kmart Corp. v. Perdue</u>, 708 So. 2d 106, 111 (Ala. 1997); <u>Whitlow v. Bruno's Inc.</u>, 567 So. 2d. 1235, 1239-40 (Ala. 1990).   Whether or not the actions of a security guard in detaining a customer constitutes a battery is generally a question of fact.  <u>Burwell v. Giant Genie Corp.</u>, 446 S.E. 2d 126, 128 (N.C. App. 1994).

Here Defendants' surveillance video provides strong evidence that Defendants did not use unreasonable force while detaining Plaintiff.  However, Plaintiff claims that she was grabbed forcefully and feared imminent harm.  It is certainly conceivable that some actions could have occurred outside the purview of the surveillance cameras, once Defendants moved Plaintiff away from them.  Thus, there appears to be a genuine issue of fact as to Plaintiff's battery claim.

**C. Motions Regarding Defendant Reno Police Officer Carranza**

Plaintiff and Defendant Carranza each filed motions seeking rulings on summary judgment regarding Carranza's liability for the allegedly unlawful arrest of Plaintiff.  Plaintiff argues that the arrest was conducted without probable cause in violation of the Fourth Amendment.  Carranza disagrees, and asserts that he has qualified immunity from section 1983 claims.

15

It is not clear as to which specific issues Defendant Carranza is seeking summary judgment. Because he directs his entire argument to refuting Plaintiff's summary judgment claim regarding an arrest without probable cause in violation of the Fourth Amendment and his qualified immunity therefrom, we will treat his cross-motion for summary judgment as only pertaining to the issue of his qualified immunity from the Fourth Amendment claim regarding arrest without probable cause.

**1.  Qualified Immunity.**

The Supreme Court has counseled that "a ruling on [summary judgement] should be made early in the proceedings so that the costs and expenses of trial are avoided where the defense is dispositive." Saucier v. Katz, 533 U.S. 194, 200 (2001). Qualified immunity involves "immunity from suit rather than a mere defense to liability." Id. (quoting Mitchell v. Forsyth, 472 U.S. 511, 526 (1985)). Thus, "like absolute immunity, [qualified immunity] is effectively lost if a case is erroneously permitted to go to trial." Saucier, 533 U.S. at 200-01 (emphasis in original).

Under Saucier v. Katz, a court must answer two questions. First, as a threshold matter, the court must ask: "Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" Id. at 201.

16

Second, <u>Saucier</u> directs that the court inquire into whether the constitutional right alleged to have been violated was clearly established.  533 U.S. at 201.  Under this second step, the relevant inquiry "is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted."  <u>Id.</u>  Thus, an officer can receive qualified immunity for reasonable mistakes as to the legality of her actions.  <u>See id.</u> at 206.  "[I]n the light of pre-existing law, the unlawfulness must be apparent."  <u>Anderson v. Creighton</u>, 483 U.S. 635, 640 (1987).  In this way, qualified immunity acts to ensure that officers are on notice that their conduct is unlawful before they are subjected to suit.  <u>Id.</u>

**a. Has Plaintiff Shown a Violation of her Fourth Amendment Rights?**

Plaintiff's Complaint alleges that her Fourth Amendment rights were violated because Defendant Carranza arrested her for trespassing without probable cause.

"'[I]n order to satisfy the requirements of the Fourth Amendment,' a warrantless misdemeanor arrest 'must be supported by probable cause to believe that the arrestee has committed a crime." <u>Arpin v. Santa Clara Valley Transp. Agency</u>, 261 F.3d 912, 924 (9th Cir. 2001) (citation omitted).  "Probable cause exists when, at the time of arrest, the agents know reasonably trustworthy information sufficient to warrant a prudent person in believing that the

17

accused had committed or was committing an offense." Id. 924-25.
The fact-finder reviews the "totality of the circumstances" in
determining probable cause.  Illinois v. Gates, 462 U.S. 213, 238
(1983).  Claims alleging that an arresting officer, who had not
himself witnessed the alleged offense, did not independently
investigate a citizen's complaint, did not inform the arrestee as
to why she was being arrested, and did not allow the arrestee to
explain her side of the story, were found to be sufficient to
survive a motion to dismiss in Arpin.  261 F.3d at 925.

Here, Plaintiff claims that Officer Carranza took the
allegations of the Peppermill staff at face value and conducted no
independent investigation of her status as a registered guest and
her medical condition prior to arresting her.  Officer Carranza
argues that many indicia of reliability supported his determination
of probable cause to arrest Ms. Durante, including his prior
experience with Peppermill staff, witness statements, and his own
observations of Ms. Durante.  Because a totality of the
circumstances determination is necessarily a fact-based
determination, and because some of the relevant facts here are in
dispute,[7] we find that genuine issues of material fact exist as to

---

[7] Ms. Durante's status as a guest and her medical condition may
not be entirely relevant to the allegations that she was a trespasser,
as the trespassing statute appears to simply require verbal warnings
to be given and ignored.  However, we need not reach that conclusion
at this stage, as the ultimate question of qualified immunity inquiry
is more easily resolved in the second prong, as discussed below.

18

the existence of an underlying constitutional violation for both
motions.

**b. Was the Constitutional Right Allegedly Violated by Officer
Carranza Clearly Established?**

For a right to be clearly established, its contours "must be
sufficiently clear that a reasonable official would understand that
what he is doing violates the right." Saucier, 533 U.S. at 201.
"Because the focus is on whether the officer had fair notice that
her conduct was unlawful, reasonableness is judged against the
backdrop of the law at the time of the conduct." Brosseau, 543
U.S. 194, 125 S. Ct. 596, 599 (2004). "If the law at the time did
not clearly establish that the officer's conduct would violate the
Constitution, the officer should not be subject to liability or,
indeed, even the burdens of litigation." Id. In addition, the
inquiry into whether the particular constitutional right was
clearly established must be undertaken "in light of the specific
context of the case, not as a broad general proposition." Saucier,
533 U.S. at 201. Thus, we must determine whether Officer Carranza
could reasonably have known that the information available to and
actions taken by him could not have provided sufficient probable
cause for Plaintiff's arrest.

As discussed above, Arpin held that police officers must base
probable cause on sufficiently trustworthy information. 261 F.3d at
924-25. In cases where the officer did not witness the crime, he

19

must conduct some independent investigation of a citizen witness's claims in order to support a misdemeanor arrest.  Id. at 925. Officer Carranza claims that he did adequately investigate by talking to security staff, obtaining statements, and observing Ms. Durante.  While Plaintiff's affidavit states that Carranza did not investigate whether she was a registered guest, she does not indicate any failure to investigate the allegations more clearly relevant to the trespass offense, namely that she was a disturbance, had been asked to leave, and refused to do so. Furthermore, unlike the Plaintiff in Arpin, a case which examined only the pleadings and not other evidence, Ms. Durante states in her affidavit that she "explained to Carranza" her side of the story. (Pl. Mot. #8, Durante Dec. at 3.)  Thus, even when the facts are taken in the light most favorable to Plaintiff, it would not have been clear to a reasonable officer that his questioning of witnesses with whom he had prior experience, his taking statements, and his observing Ms. Durante, would not have been sufficient investigation to establish trustworthy information supporting probable cause.

**IT IS, THEREFORE, HEREBY ORDERED** that, as addressed above, Plaintiff's Motions for Summary Judgment (## 8, 9) are **DENIED.**

**IT IS, FURTHER, HEREBY ORDERED** that, as addressed above, Defendants Peppermill and Chittenden's Motion for Summary Judgment (#29) is **DENIED**.

**IT IS, FURTHER, HEREBY ORDERED** that, as addressed above, Defendant Carranza's Motion for Summary Judgment (#31) is **GRANTED** as to a finding that he has qualified immunity from the Fourth Amendment claims alleged against him.

DATED: This 24th day of January, 2006.


_____
UNITED STATES DISTRICT JUDGE

21